Johnson *v.* Concord Mutual Insurance Co.,
Appellant.

Argued November 9, 1972. Before JONES, C. J.,
EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MAN-
DERINO, JJ.

*Bancroft D. Haviland,* with him *David S. Hope,* and *Schnader, Harrison, Segal & Lewis,* for appellant.

*David N. Rosen,* with him *Rosen, Sherwin & Seltzer,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, January 19, 1973:

Following a collision with an uninsured motorist, appellee, Howard Johnson, instituted a proceeding in equity against Concord Mutual Insurance Company (Concord) and Temple Insurance Agency (Temple) seeking reformation of an insurance policy under which Johnson was the insured, Concord the insurer, and Temple, Concord's agent. Appellee alleged that uninsured motorist coverage, as required by Act of August 14, 1963, P. L. 909, §1, 40 P.S. §2000, was not validly rejected and, therefore, was improperly excluded from the policy.

On September 13, 1966, Johnson was advised by Ira Wecksler, an agent for Temple, that his automobile insurance policy would soon expire.[1] At Johnson's request, Wecksler met with Johnson to arrange for a renewal of insurance. At that time, a binder-application for an insurance policy with Concord was prepared by the carrier which contained a purported waiver of uninsured motorist coverage. Johnson signed the printed

---

[1] Appellee's prior insurance policy contained uninsured motorist coverage.

form in two places, one below the printed text of the application, the other below the challenged waiver of uninsured motorist coverage. The claimed waiver reads in fine print, "I HEREBY STATE THAT I DO NOT DESIRE UNINSURED MOTORIST COVERAGE IN MY AUTO LIABILITY POLICY."[2] The two dollar premium for such coverage was neither charged nor paid.

Johnson testified that he was 69 years old at the time he applied for renewal of insurance and that he had a fourth grade education. He stated that nothing was said about uninsured motorist coverage and neither the terms of such coverage nor the waiver of that protection were explained. Rather, he was merely told to sign on the lines on which Wecksler had placed a check-mark. Wecksler, however, testified that he did discuss the uninsured motorist provision. The relevant portions of that testimony are set forth in the margin.[3]

---

[2] The following is a photostatic copy of the contested waiver provision as it appears on the binder-application.

[3] "Q. Did you at that time tell him what the uninsured motorist vehicle coverage was? A. Yes. I indicated the entire thing out, by the individual premiums as well as the total premiums. * * * Q. Did you discuss with him the various items that you were talking about as to the possibility of dropping? A. Certainly. Q. Did this include uninjured [sic] motor vehicle coverage? A. I usually go over every item to make sure—MR. ROSEN: Objection to the answer. THE COURT: I will sustain the objection. Answer your lawyer's question. BY MR. HAVILAND: Q. You see, Mr. Wecksler, the objection is properly based because of what you are saying, namely,

On March 3, 1971, the trial court issued a decree nisi which ordered Concord to include uninsured motorist coverage in the policy and which required Johnson to pay two dollars, the cost of such coverage. (The action against Temple was dismissed.) The trial court found that Johnson was "misled" by Wecksler who did not call "Plaintiff's attention to the waiver or rejection of 'uninsured motorist' coverage statement which Plaintiff signed."

On this appeal appellant, Concord, contends that the insurance policy may not be reformed because there was no finding of fraud, accident, or mistake. Furthermore, it asserts that since there was no fraud, the parol evidence rule required the exclusion of certain testimony concerning the discussions between Johnson and Wecksler. We need not decide whether or not fraud was established. Even assuming, arguendo, that there was no fraud, we conclude that the purported waiver was ineffective; therefore, we affirm.

The statute in effect at the time the policy was issued provided: "No policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of

---

what you usually do. Did you go over them with Mr. Johnson? A. Yes, I did. Q. What did you tell Mr. Johnson concerning where he had to sign the agreement? A. Well, when we discussed exactly what he was going to get, what I would include for the $190.—and he understood, exactly what I told him—MR. ROSEN: Objected to, Your Honor. THE COURT: Well—THE WITNESS: I did mention to him the items that I was going to give him, the items that I was going to include in the policy. And he understood—from what I understood—that he wasn't going—to get the collision, I was going to drop off the personal effects, I dropped off the uninsured motorist protection, and gave him the bare necessities that—to drop the figure to $190. BY MR. HAVILAND: Q. And did you advise him as to where he had to sign? A. Well, I indicated, yes, that he would have to sign the application as well as the rejection of the uninsured motorist protection."

618

the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto in limits for bodily injury or death as are fixed from time to time by the General Assembly in section 1421 of article XIV of 'The Vehicle Code,' act of April 29, 1959 (P. L. 58), under provisions approved by the Insurance Commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom: Provided, however, *That the named insured shall have the right to reject such coverage in writing*: And provided further, That unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer." Act of August 14, 1963, P. L. 909, §1, 40 P.S. §2000 (emphasis added).[4] Under the pro-

---

[4] The statute was amended December 19, 1968, effective January 1, 1969. As amended, it permits rejection of uninsured motorist coverage only as follows:

"(1) An owner or operator of (i) any motor vehicle designed for carrying freight or merchandise or, (ii) any motor vehicle operated for the carriage of passengers for hire or compensation, having in either instance been granted a certificate of public convenience or a permit by the Pennsylvania Public Utility Commission or been issued a certificate of public convenience and necessity or a permit by the Interstate Commerce Commission, and

"(2) An owner or operator of any other motor vehicle designed for carrying freight or merchandise or operated for the carriage of passengers for hire whose employes are insured under the provisions of 'The Pennsylvania Workmen's Compensation Act,' act of June 2, 1915 (P. L. 736), as amended, shall have the right to reject such coverage in writing in which event, such coverage need

vision governing this controversy, all policies must contain uninsured motorist coverage unless the insured rejects such protection in writing.

The purpose of this coverage is to "afford financial recompense to persons who receive injuries or the dependents of those who are killed, solely through the negligence of motorists, who, because they are uninsured and not financially responsible, cannot be made to satisfy a judgment." 2 Long, The Law of Liability Insurance §24.03 (1972). In *Harleysville M. Cas. Co. v. Blumling*, 429 Pa. 389, 241 A. 2d 112 (1968), we emphasized the purpose of such protection. There, we said: "In Pattani v. Keystone Ins. Co., 426 Pa. 332, 231 A. 2d 402 (1967), we quoted with approval the language of Katz v. American Motorists Ins. Co., 53 Cal. Rptr. 669 (1966), that such statutes are 'designed to give monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injuries through the negligent use of those highways by others.' We there declared *for liberal construction* of the statute in order to achieve the legislative intent, and we here adhere to that declaration." Id. at 395, 241 A. 2d at 115 (emphasis added). Thus, our determination here is in harmony with the view that the "statute evolves from public policy considerations and must be *broadly and liberally construed* to accomplish this purpose. Conversely, that portion of the statute permitting *rejection of uninsured motorist coverage detracts from the public policy considerations* and *must therefore be narrowly and strictly construed." Weathers v. Mission Insurance Company*, 258 So. 2d 277, 279 (Fla.

not be provided in or supplemental to a renewal policy where such insured had rejected the coverage in connection with a policy previously issued to him by the same insurer." (Footnote omitted.)

Dist. Ct. App. 1972) (footnote omitted) (emphasis added).

Recognizing these previously expressed public policy considerations, we must conclude that a waiver of uninsured motorist coverage is effective only if the waiver manifests the intentional relinquishment of this legislatively granted right of insurance protection. Accord, *Dufresne v. Elite Insurance Company*, 26 Cal. App. 3d 916, 103 Cal. Rptr. 347 (1972); *Hagar v. Elite Insurance Company*, 22 Cal. App. 3d 505, 99 Cal. Rptr. 423 (1971); *Lichtenberger v. American Motorists Insurance Co.*, 7 N.C. App. 269, 172 S.E. 2d 284 (1970); *Abate v. Pioneer Mutual Casualty Co.*, 18 Ohio App. 2d 73, 246 N.E. 2d 919 (1969), aff'd, 22 Ohio St. 2d 161, 258 N.E. 2d 429 (1970); *Bohlert v. Spartan Insurance Company*, 3 Cal. App. 3d 113, 83 Cal. Rptr. 515 (1969). We have previously held: "[a] waiver in law is the act of *intentionally* relinquishing or abandoning some known right, claim or privilege. See, Bell's Estate, 139 Pa. Superior Ct. 11, 10 A. 2d 835 (1940); and, Sudnick v. Home Friendly Insurance Co., 149 Pa. Superior Ct. 145, 27 A. 2d 468 (1942). To constitute a waiver of a legal right, there must be a clear, unequivocal and decisive act of the party with knowledge of such right and an evident purpose to surrender it: Kahn v. Bancamerica-Blair Corporation, 327 Pa. 209, 193 A. 905 (1937); and Cole v. Phila. Co., 345 Pa. 315, 26 A. 2d 920 (1942)." *Brown v. Pittsburgh*, 409 Pa. 357, 360, 186 A. 2d 399, 401 (1962).

We agree with the chancellor that appellant-insurer has not met its burden of proving that the insured intelligently and knowingly waived uninsured motorist coverage. See *Lichtenberger v. American Motorists Insurance Co.*, supra (burden of proving rejection is on the insurer). The claimed waiver provision, on its face, is obviously not "conspicuous, plain and clear," *Kincer*

*v. Reserve Insurance Company,* 11 Cal. App. 3d 714, 720, 90 Cal. Rptr. 94, 97 (1970), and it does not contain language which would "clearly and specifically apprise the insured of the nature of the right he is relinquishing." *Dufresne v. Elite Insurance Company,* supra at 620, 103 Cal. Rptr. at 352. Rather, the sixteen word, single line provision at the extreme end of the binder-application form merely reads in fine print that the insured does not desire the protection. No explanation of the coverage (or two dollar cost) appears within the rejection form prepared by the insurance carrier and printed at the foot of the application. It is evident that this claimed rejection is not affirmatively expressed in writing by the insured. The record fails to disclose an express agreement or acquiescence on the part of the insured to delete or relinquish this protection. The statutory mandate may be complied with only by including uninsured motorist coverage or by an affirmatively expressed rejection in writing by the insured. Nothing less will satisfy the statutory obligation.

The single line on the carrier's printed form is insufficient on its face to constitute a valid rejection. Additionally, the testimony does not reveal that Johnson knowingly and affirmatively rejected uninsured motorist coverage. Even accepting Wecksler's testimony that he discussed the protection, an examination of his testimony reveals that he failed to properly explain the type of protection being rejected by the insured's signature on the very last line. In these circumstances, the insured's signature, is insufficient to establish an effective rejection of his statutory right of protection. Accord, *Dufresne v. Elite Insurance Company,* supra; *Hagar v. Elite Insurance Company,* supra; *Bohlert v. Spartan Insurance Company,* supra.

In *Hagar v. Elite Insurance Company,* supra, the California court was confronted with facts very similar to those in the instant case. There, the California appellate court stated: "As we have said above, the public policy of this state requires an insurer to provide uninsured motorist coverage, even though the policy does not provide for it and even if no premium for such coverage is charged or collected. That coverage is imposed on the insurer as a matter of law . . . and it requires a clear and express agreement between the parties to delete it.

"Neither the language of the purported agreement to delete nor the explanation given to plaintiff by Mr. Van Leeuwen [the agent] meets the test of clarity and specificity imposed by the cases above cited." Id. at 510, 99 Cal. Rptr. at 426.

Finally, appellant asserts that an insurance policy may not be reformed for a party who failed to read the language of the contract. This argument fails to recognize that the Legislature has mandated that all insurance policies *must* include uninsured motorist coverage. Moreover, appellant's assertion ignores the fact that the insurance policy, itself, provides: "Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes." Thus, the insured's failure to read the contract neither relieves insurer of its duty to include such protection nor adds validity to the claimed rejection. See *Lichtenberger v. American Motorists Insurance Company,* supra. We agree that "[b]ecause uninsured motorist coverage has been legislatively declared to be a matter of public policy, a deletion of coverage is not to be determined by traditional rules of waiver and estoppel." *Dufresne v. Elite Insurance Company,* supra at 926, 103 Cal. Rptr. at 353.

Decree affirmed. Each party to pay own costs.

Concurring Opinion by Mr. Justice Pomeroy:

The Court holds that "a waiver of uninsured motorist coverage is effective only if the waiver manifests the intentional relinquishment of this . . . right . . ."; that the coverage will be held to attach unless there is "an affirmatively expressed rejection in writing by the insured." With these conclusions I agree; in light of the public policy considerations involved, they are a justifiable judicial gloss on the simple statutory provision that the insured "shall have the right to reject such coverage in writing". 40 P.S. §2000.

I must disagree with the Court, however, when it states that an intentional relinquishment or an affirmatively expressed rejection is not provided by the declaration made by the insured in this case. The words here involved, "I HEREBY STATE THAT I DO NOT DESIRE UNINSURED MOTORIST COVERAGE IN MY AUTO LIABILITY POLICY", printed in fully legible all-capital letters, seem to my mind to be an affirmatively expressed rejection, and clearly to denote "an intentional relinquishment." I see no need or justification to insist on further recitations or embellishments, as if one were waiving federal constitutional rights in a criminal case. See *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966).

The form of the waiver aside, the lower court found that on the facts of this case the insured was misled by the agent of the insurer and signed the waiver under a mistake of fact as to its meaning. While this is a close question, I cannot say that the chancellor either abused his discretion or committed any error of law in so holding. Accordingly, I would affirm the decree on that limited basis.

Mr. Chief Justice Jones joins in this concurring opinion.