**PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY, Appellant**

v.

**Laureene PENDLETON, Administratrix of the Estate of Yvonne Martin, Deceased.**

No. 88–1125.

United States Court of Appeals, Third Circuit.

Argued Aug. 29, 1988.

Decided Oct. 13, 1988.

Rehearing and Rehearing In Banc Denied Nov. 10, 1988.

Walter S. Jenkins (argued), Sweeney, Sheehan & Spencer, Philadelphia, Pa., for appellant.

John J. Branigan (argued), Philadelphia, Pa., for appellee.

Before SLOVITER, GREENBERG and COWEN, Circuit Judges.

## OPINION OF THE COURT

COWEN, Circuit Judge.

This appeal arises from an order of the district court reforming the automobile insurance policy issued by the plaintiff so as to increase the defendant's uninsured motorist coverage to $50,000 for each person and $100,000 per occurrence. Upon review, we conclude that the district court erred in its construction of the Pennsylvania Motor Vehicle Financial Responsibility Act and will reverse.

### I.

Plaintiff, Prudential Property and Casualty Insurance Company ("Prudential") appeals to this Court from an order denying its motion pursuant to Fed.R.Civ.P. 59(e) to alter or amend a judgment entered in favor of defendant. This is a diversity action in which the district court applied Pennsylvania law. The Court of Appeals has jurisdiction under 28 U.S.C. § 1291.

In February, 1986, Augustus Saxton, an agent employed by Prudential, met with Virgil Robinson at Robinson's residence for the purpose of preparing an application for no-fault motor vehicle insurance. The application was filled out by Saxton and was signed by Robinson in the following three places: (1) under the election for uninsured (UM) and underinsured (UIM) motorists coverage; (2) under the binder of insurance coverage; and (3) under the "Important Notice" language of the policy. The original application and all but one carbon copy were then taken by Saxton for transmittal to Prudential. Saxton gave the remaining carbon copy to Robinson. Saxton's copy clearly showed that the box checked for uninsured/underinsured coverage was $15,000/$30,000. However, Robinson's copy showed the check mark to be between two boxes, namely, the box designating $15,000/$30,000 in coverage and the box which

states "the same as my bodily injury limits" (here, $50,000/$100,000).[1]

On May 7, 1986, Robinson's fiancee, Yvonne Martin, while operating Robinson's vehicle, was killed on the Schuykill Expressway in Philadelphia as a result of an accident with an uninsured motorist. Robinson, a passenger in the vehicle at the time of the accident, was injured and made a claim for uninsured motorist benefits under his policy with Prudential. Laureene Pendleton, administratrix of the estate of Yvonne Martin, also made a claim for uninsured motorist benefits on behalf of Martin's estate. Following the above claims, Prudential brought this suit against Pendleton seeking a declaratory judgment regarding the insurance policy issued by Prudential to Robinson. The inquiry focused on the uninsured motorist coverage limits available to Martin's estate under that policy. Prudential alleged that the applicable limit was $15,000 on the basis of its copy of the application signed by Robinson.

The Pennsylvania Motor Vehicle Financial Responsibility Law ("PMVFRL")[2] imposes the requirement that an insurer provide uninsured motorist coverage in an amount equal to the bodily injury liability coverage unless the insured waives the requirement.[3] Section 1734 provides that a named insured "may request in writing the issuance of coverages under section 1731 (relating to scope and amount of coverage) in amounts less than the limits of liability for bodily injury but in no event less than the amounts required by this chapter for bodily injury."[4]

Section 1791 of the PMVFRL specifies the form of notice which must be furnished to the insured concerning the availability of coverages and the insured's right to select greater or lesser amounts of coverage. The section creates a presumption that an insured's signature on the "Important Notice" evidences "actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits ... [the insured has] selected."[5]

---

1. The parties do not dispute the fact that Robinson's policy provides for $50,000/$100,000 in bodily injury coverage. The district court surmised that the disparity between Saxton's copy and Robinson's copy probably resulted from an incorrect alignment of the carbons. App. at 153.

2. 75 Pa.Cons.Stat.Ann. §§ 1701 et seq. (Purdon Supp.1988).

3. Section 1731 states specifically that:
   § 1731. Scope and amount of coverage (a) General rule.—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are provided therein or supplemental thereto in amounts equal to the bodily injury liability coverage except as provided in section 1734 (relating to request for lower or higher limits of coverage).
   75 Pa.Cons.Stat.Ann. § 1731 (Purdon Supp. 1988).

4. 75 Pa.Cons.Stat.Ann. § 1734 (Purdon Supp. 1988).

5. Section 1791 provides:
   § 1791. Notice of available benefits and limits
   It shall be presumed that the insured has been advised of the benefits and limits available under this chapter provided the follow-

ing notice in bold print of at least ten-point type is given to the applicant at the time of application for original coverage or at the time of the first renewal after October 1, 1984, and no other notice or rejection shall be required:

IMPORTANT NOTICE

Insurance companies operating in the Commonwealth of Pennsylvania are required by law to make available for purchase the following benefits for you, your spouse or other relatives or minors in your custody or in the custody of your relatives, residing in your household, occupants of your motor vehicle or persons struck by your motor vehicle:
   (1) Medical benefits, up to at least $100,000.
   (2) Income loss benefits, up to at least $2,500 per month up to a maximum benefit of at least $50,000.
   (3) Accidental death benefits, up to at least $25,000.
   (4) Funeral benefits, $2,500.
   (5) As an alternative to paragraphs (1) through (4), a combination benefit, up to at least $277,500 of benefits in the aggregate or benefits payable up to three years from the date of the accident, whichever occurs first, subject to a limit on accidental death benefit of up to $25,000 and a limit on funeral benefit of $2,500.
   (6) Uninsured, underinsured and bodily injury liability coverage up to at least $100,000 because of injury to one person in any one accident and up to at least $300,000 because

The district court concluded as a finding of fact that Prudential included this statutory form of notice in its policy application and that Robinson had in fact voluntarily signed it. App. at 152. There was no proof or even any allegation that Robinson's signature was not given voluntarily or that it was procured by fraud. The language in the "Important Notice" that Robinson signed mirrors the language of section 1791 of the PMVFRL.

At the time of the accident, Robinson had not received a copy of the actual policy. The district court found during the bench trial that although a policy was apparently issued and may well have been mailed to Robinson by Saxton, it was reasonably clear that the policy never reached Robinson who had changed residences in the interim.[6] App. at 151. The district court, however, did review two copies of Robinson's application for insurance—the agent's copy which clearly indicated a check mark squarely placed next to "$15,000/$30,000" of uninsured motorist coverage and Robinson's copy which revealed a check mark in between the "$15,000/$30,000" box and the box designating coverage for "the same as my bodily injury limits." App. at 152–53. The court found that an ambiguity existed with respect to uninsured motorist coverage despite its finding that Robinson had signed the policy under the place designating uninsured motorist coverage and its finding that "on the agent's copy, the box for $15,000/$30,000 uninsured motorists coverage is checked, and it is probable that

the same information appeared on the original application." App. at 151.

In rejecting Prudential's contentions, the district court determined that the presumption of waiver imposed by section 1791 was merely rebuttable as opposed to conclusive, and placed the burden of proof on Prudential to establish that Robinson knowingly and intelligently waived the statutory requirement that uninsured motorists coverage equal coverage for bodily injury. The district court found that there had been no such waiver by Robinson under the statute. App. at 154. In making that determination, the district court cited for authority *Johnson v. Concord Mutual Ins. Co.*, 450 Pa. 614, 300 A.2d 61 (1973).[7] The court then reformed Robinson's policy to provide $50,000/$100,000 of uninsured motorist coverage. Prudential appeals to this Court.

## II.

We need not resolve the factual disputes between the parties concerning statements made and explanations given at the time Robinson checked the box and signed his name on the waiver provision of the policy. Our determination instead is based on our perception of the single, pivotal issue in this case and on what we perceive to be the reason for the enactment of section 1791 of the PMVFRL. The central issue which this Court must decide is whether section 1791 of the PMVFRL imposes a conclusive, as opposed to a rebuttable, presumption. Since we are reviewing the district court's

---

of injury to two or more persons in any one accident or, at the option of the insurer, up to at least $300,000 in a single limit for these coverages, except for policies issued under the Assigned Risk Plan. Also, at least $5,000 for damage to property of others in any one accident. Additionally, insurers may offer higher benefit levels than those enumerated above as well as additional benefits. However, an insured may elect to purchase lower benefit levels than those enumerated above. Your signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected.
75 Pa.Cons.Stat.Ann. § 1791 (Purdon Supp. 1988) (emphasis added).

6. Ironically, a copy of the actual policy signed by Robinson was never introduced into evidence. *See* App. at 69. Understandably, the district court had a difficult task in determining the actual terms of the policy. Further, the district court was presented with no evidence of premiums charged which may have had some bearing on whether Robinson had elected $15,000/$30,000 of coverage or $50,000/$100,000 coverage. App. at 151.

7. In support of its determination that there had been no knowing and intelligent waiver, the district court found that the matter of uninsured motorist coverage was not discussed by Robinson's agent.

construction of a statute, our review is plenary.

The decision of the district court appears to be based on general insurance law rather than a prediction of how the Pennsylvania Supreme Court would construe section 1791. The issue is really one of predicting Pennsylvania law. Thus, we must predict how the Pennsylvania Supreme Court, if faced with the identical issue, would construe the statute. *Compagnie Des Bauxites de Guinee v. Insurance Co. of N. Am.,* 724 F.2d 369, 371 (3d Cir.1983); *Connecticut Mut. Life Ins. Co. v. Wyman,* 718 F.2d 63, 66 (3d Cir.1983).

### III.

### The PMVFRL

In construing any statute, it is instructive first to examine the statute's purpose. The purpose of uninsured motorist coverage statutes is to protect the insured (and any additional insureds) from the risk that a negligent driver of another vehicle will cause injury to the insured (or the additional insureds), and will not have liability coverage to compensate for the injuries. *See, e.g., Myers v. State Farm Ins. Co.,* 842 F.2d 705, 709–10 (3d Cir.1988) (construing § 1731(a) of the PMVFRL as it applies to the analogous situation of underinsurance); *Wolgemuth v. Harleysville Mut. Ins. Co.,* 370 Pa.Super. 51, 58, 535 A.2d 1145, 1149 (1988) (en banc) (same); *Johnson v. Concord Mutual Ins. Co.,* 450 Pa. 614, 619, 300 A.2d 61, 64 (1973) (construing a predecessor of the PMVFRL); *Boyle v. State Farm Mut. Auto. Ins. Co.,* 310 Pa.Super. 10, 21, 456 A.2d 156, 162 (1983) (stating that "[t]he purpose of the uninsured motorist law has been frequently and consistently interpreted by our courts as providing protection to innocent victims of uninsured drivers."); *Harleysville Mut. Casualty Co. v. Blumling,* 429 Pa. 389, 395, 241 A.2d 112, 115 (1968) (stating that such statutes are "designed to give monetary protection to that ... large group of persons who ... suffer grave injuries through negligent use of those highways by others.") (citations omit-

ted). Accordingly, courts have liberally construed uninsured motorist statutes. *See Wolgemuth,* 370 Pa.Super. at 63, 535 A.2d at 1151 (construing the PMVFRL). Conversely, waiver provisions detract from public policy considerations and have been narrowly and strictly construed. *Johnson,* 450 Pa. at 619, 300 A.2d at 64.

When ascertaining matters of state law, the decisions of the state's highest court constitute the authoritative source. If the Pennsylvania Supreme Court has not yet passed on the question before us, we must consider the pronouncements of the lower state courts. *Aetna Casualty & Surety Co. v. Farrell,* 855 F.2d 146, 148–49 (3d Cir.1988); *Connecticut Mut. Life Ins. Co. v. Wyman,* 718 F.2d 63, 65 (3d Cir.1983). Such decisions should be given proper regard, but not conclusive effect. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782–83, 18 L.Ed.2d 886 (1967); *McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 662 (3d Cir.1980), *cert. denied,* 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980); *Adams v. Cuyler,* 592 F.2d 720, 725 n. 5 (3d Cir.1979), *aff'd,* 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981). Our research indicates that the statutory construction issue presented here has not been decided by the state's supreme court.

It is also unfortunate that the PMVFRL, unlike the now-repealed No Fault Motor Vehicle Insurance Act,[8] does not contain a statement of findings and purpose. Further, our independent research indicates that the rationale underlying the inclusion of mandatory uninsured motorist coverage in the PMVFRL and the waiver provision was not the subject of debate or specific discussion by members of the Pennsylvania House or Senate.

Yet we are not without any guiding light in construing this statute as the Pennsylvania Superior Court has recently stated that "we must be guided in our interpretation of the Motor Vehicle Financial Responsibility Law by the Statutory Construction

---

**8.** Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. §§ 1009.101 *et seq.,* repealed by the PMVFRL, Act of February 12, 1984, P.L. 26, No. 11, § 8(a), (effective October 1, 1984).

Act...." [9] *Wolgemuth*, 370 Pa.Super. at 62, 535 A.2d 1151. We are persuaded by this unanimous in banc Pennsylvania Superior Court decision that the PMVFRL should be interpreted in accordance with this Act. *See generally Wisniewski v. Johns–Manville Corp.*, 759 F.2d 271, 273–74 (3d Cir.1985) ("Although lower state court decisions are not controlling on an issue on which the highest court of the state has not spoken, federal courts must attribute significant weight to these decisions in the absence of any indications that the highest state court would rule otherwise."); *Adams v. Cuyler*, 592 F.2d 720, 725 n. 5. (3d Cir.1979) ("Federal courts ... may consider the pronouncements of state intermediate appellate courts as an indication of how the state's highest court would rule."), *aff'd*, 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981).

## IV.

### Applying the Statutory Construction Act

According to the Statutory Construction Act, when a statute is not explicit, the intention of the General Assembly may be ascertained by considering:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.[10]

Our analysis of several of the above considerations, coupled with the clear language of Section 1791, prompts us to conclude that the presumption contained in section 1791 of the PMVFRL is conclusive.

Section 1921(c)(1) of the Statutory Construction Act instructs us to look at "[t]he occasion and necessity for the statute." [11] Prior to the PMVFRL, a predecessor act construed in *Johnson v. Concord Mut. Ins. Co.*, 450 Pa. 614, 300 A.2d 61 (1973) merely provided with respect to waiver that "the named insured shall have the right to reject such coverage in writing." [12] Because so little guidance was given in the prior statute with respect to waiver, numerous questions as to the sufficiency of waiver were raised. *See generally*, Annotation, *Construction of Statutory Provision Governing Rejection or Waiver of Uninsured Motorist Coverage*, 55 A.L.R.3d 216 (1974) (discussing the sufficiency of waiver under various state statutes); *see also Johnson v. Concord Mut. Ins. Co.*, 450 Pa. at 621, 300 A.2d at 65 (holding that an effective waiver provision must be conspicuous, must contain language "clearly and specifically" apprising the insured of the nature of the right he is relinquishing, and must when executed by the insured, represent an "affirmatively expressed rejection."). The Pennsylvania Supreme Court in *Johnson* concluded that the defendant insurer did not meet its burden of proving that the insured knowingly and intelligently waived uninsured motorist protection. In so holding, the court emphasized that a waiver of uninsured motorist coverage is effective only if the insured, with knowledge of his right to the protection, manifests his intention to relinquish such right by a clear, decisive and unequivocal act. Since the rejection statement itself contained no explanation of the coverage and since the insurer's agent failed to offer such an explanation at the time the application form was tendered, such statement was held not

---

**9.** 1 Pa.Cons.Stat.Ann. §§ 1501 *et seq.* (Purdon Supp.1988).

**10.** 1 Pa.Cons.Stat.Ann. § 1921 (Purdon Supp. 1988).

**11.** 1 Pa.Cons.Stat.Ann. § 1921(c)(1) (Purdon Supp.1988)

**12.** 450 Pa. at 618, 300 A.2d at 64 (construing the Act of Aug. 14, 1963, P.L. 909, § 1, 40 Pa.Stat. Ann. § 2000).

to constitute a waiver.[13] The district court in the instant case relied on *Johnson,* a pre-PMVFRL case, in reaching its decision.

 We find that the enactment of the PMVFRL and its elaborate waiver provision can only be seen as an attempt by the Pennsylvania General Assembly to eliminate much of the confusion as to the sufficiency of waiver which was presented in the *Johnson* line of cases. It is therefore logically compelling to view the presumption in section 1791 as conclusive. Thus, once it is proven that an insured voluntarily signs the waiver, he cannot be heard to rebut it.

 Appellee urges that the ambiguity in Robinson's application should be construed against the insurer and that the evidence sufficiently rebuts the presumption of waiver. It is undoubtably a rule of construction in Pennsylvania that ambiguities are construed against the insurer when the dispute is over policy coverage. *See, e.g., Standard Venetian Blind Co. v. American Empire Ins. Co.,* 503 Pa. 300, 305, 469 A.2d 563, 566 (1983); *Miller v. Prudential Ins. Co. of America,* 239 Pa. Super. 467, 472, 362 A.2d 1017, 1020 (1976); *Miller v. Boston Ins. Co.,* 420 Pa. 566, 570, 218 A.2d 275, 277 (1966). However, such rule of construction cannot be applied in this case as we find the presumption of waiver to be a conclusive presumption once it is proven that the insured voluntarily signed the waiver. If the policy limitations relied on by the insurer to deny coverage under a policy are clearly worded and conspicuously displayed, then, absent proof of fraud, "the insured may not avoid the consequences of that limitation by proof that he failed to read the limitation or that he did not understand it." *Standard Venetian Blind Co. v. American Empire Ins. Co.,* 503 Pa. at 307, 469 A.2d at 567.

## V.

### CONCLUSION

For the foregoing reasons, we will reverse the judgment of the district court and remand with direction that judgment be entered for Prudential declaring that the uninsured motorist coverage on the Robinson policy is $15,000/$30,000.

---

**13.** The statement, "I do not desire uninsured motorist coverage in my auto liability policy," which was printed at the end of an application form and separately signed by the insured, was held insufficient on its face to constitute a valid rejection. 650 Pa. at 621, 300 A.2d at 65.