## Nealy v. State Farm Mutual Automobile Insurance Co.

*Richard C. Angino,* for plaintiffs.
*Robert E. Kelly Jr.,* for defendants.

HESS, *J.,* March 22, 1990 — This case is now before the court on a motion for judgment on the pleadings. Before we can grant such a motion, we must be satisfied that there exists no genuine issue of fact and that the moving party is entitled to a judgment as a matter of law. *Beardell v. Western Wayne School District,* 91 Pa. Commw. 348, 496 A.2d 1373 (1985). In arriving at its decision, the court must consider all the pleadings, together with attached exhibits, "keeping in mind that the moving party admits the truth of all allegations of his adversary and the untruth of his own allegations that have been denied." *Kline v. Pennsylvania Mines Corp.,* 120 Pa. Commw. 7, 9, 547 A.2d 1276, 1277 (1988). Where warranted, judgment on the pleadings should be entered since trial would be a fruitless exercise. *Kline, supra.*

The complaint in this case recites that Troy Robert Nealy, the son of the plaintiff administrators, died in a motor vehicle accident on February 6, 1988. The policy limits of $300,000 have been tendered by the tort-feasor whose negligence caused Troy's death. The estate has now turned to underinsurance motorist coverage which it has with

the defendant, State Farm Mutual Automobile Insurance Company. According to its written terms, while the liability limits of the Nealys' automobile insurance police are $250,000/$500,000, their uninsured and underinsured motorists' bodily injury limits are only $25,000/$50,000.

Plaintiffs bring this suit contending that, notwithstanding the provisions of their policy, their underinsured coverage should be $250,000/$500,000. They take this position for several reasons. First, they were never properly advised as to the nature of uninsured/underinsured coverage and the small cost differential involved. Second, defendant's agent never indicated to them that the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §1701 et seq., mandated that underinsured coverage be equal to bodily injury liability unless the insured specifically requested in writing a lower or higher limit. Finally, neither Robert nor Marilyn Nealy specifically requested the lower limit for underinsured motorist coverage in conformity with section 1734 of the Financial Responsibility Law.

Defendants have answered claiming that plaintiffs voluntarily selected lower underinsurance coverage and in so doing signed all of the necessary waivers and elections required to bind them under the Financial Responsibility Law. To this plaintiffs have replied that even though Mr. or Mrs. Nealy's signatures do indeed appear on the documents, the forms were prepared by employees of State Farm, the papers were never read to the Nealys, uninsured and underinsured options were never discussed, the Nealys were given none of the applications to read before they signed them, and, finally, the print size of the documents, purporting to lower their underinsured motorist coverage, was not in accordance with that required by statute. Defendants, in turn,

counter that these factual averments are of no moment in light of the holding in *Prudential Property and Casualty Insurance v. Pendleton,* 858 F.2d 930 (3d Cir. 1988).

In *Prudential, supra,* the federal court dealt with questions concerning the Pennsylvania Motor Vehicle Financial Responsibility Law as to which our appellate courts have not yet spoken. Thus, as is so often the case, the federal court was engaged in predicting how the Pennsylvania Supreme Court would construe the statute, if faced with the identical issue. Like the matter sub judice, *Prudential* dealt with provisions regarding underinsured and uninsured motorist coverage:*

"The Pennsylvania Motor Vehicle Financial Responsibility Law ('PMVFRL') imposes the requirement that an insurer provide uninsured motorist coverage in an amount equal to the bodily injury liability coverage unless the insured waives the requirement. Section 1734 provides that a named insured 'may request in writing the issuance of coverages under section 1731 (relating to scope and amount of coverage) in amounts less than the limits of liability for bodily injury but in no event less than the amounts required by this chapter for bodily injury.'

"Section 1791 of the PMVFRL specified the form of notice which must be furnished to the insured concerning the availability of coverages and the insured's right to select greater or lesser amounts of coverage. The section creates a presumption that an insured's signature on the 'Important Notice' evidences 'actual knowledge and understanding of the

---

* While *Prudential Property and Casualty Insurance v. Pendleton, supra,* dealt with uninsured motorists' coverage and this case deals with underinsured motorists' coverage, the statutory provisions are the same.

availability of these benefits and limits as well as the benefits and limits . . . [the insured has] selected.' " *Prudential* at 932. (footnotes omitted)

In the *Prudential* case a question arose as to whether the insured, Virgil Robinson, had completed a valid election of uninsured motorist coverage in amounts of only $15,000/$30,000 when his bodily injury limits were $50,000/$100,000. The Court of Appeals concluded that the election of the lesser amount was valid but based its finding on the factual conclusions of the Federal District Court. The District Court had, indeed, found as a fact that Prudential had included the necessary statutory form of notice in its policy application and, moreover, that Robinson had *voluntarily* signed the waiver necessary to lower his uninsured motorist coverage.

The holding of the court was, therefore, that "once it is proven that an insured *voluntarily* signs the waiver, he cannot be heard to rebut it." *Prudential, supra,* at 936. (emphasis supplied) We do not disagree with this statement of the law. The instant defendants, however, err when they attempt to apply it to this case. They would have us construe the ruling of the Court of Appeals to mean that anything other than a coerced signature on the section 1734 request establishes irrebuttably that an insured has waived the coverage. We do not accept such a narrow interpretation.

We find it hard to imagine any situation in which someone's signature on an insurance document would be forced or "involuntary" in the conventional sense. Admittedly, the final sentence of section 1971, "Important Notice," says:

"Your signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding and availability of these

606

benefits and limits as well as the benefits and limits you have selected." 75 Pa.C.S. §1791.

If, however, an insurance agent prevents one from reading the form containing this language, and it is not otherwise explained to the customer, then one's signature on the form cannot possibly evidence "actual knowledge and understanding." The requirement in *Prudential, supra,* that the signature on the waiver be "voluntary" must, we believe, be interpreted to mean that not only was the signing a volitional act, but that the insured read or at least had reasonable opportunity to read the form and understand its contents. In this latter regard, plaintiffs make certain factual allegations concerning a lack of this opportunity. These factual allegations are material and disputed. Summary judgment is therefore inappropriate.

## ORDER

And now, March 22, 1990, the motion of defendant for judgment on the pleadings is denied.