## Nationwide Insurance Co. v. Profit

*Robin Thornburg,* for plaintiff.
*Marla Welker,* for defendant.

FEUDALE, *J.,* January 15, 1991—Before the court is the parties' motion for a declaratory judgment on the pleadings, submitted by stipulation on briefs only. On April 28, 1986, plaintiff Nationwide Insurance Company issued to decedent Richard Profit a Century II Auto Policy No. 296-426 (hereinafter referred to as "policy") containing bodily injury liability limits of $50,000 per person, $100,000 per occurrence and containing underinsured/uninsured motorist benefits of $15,000 per person and $30,000 per occurrence.

The original application for automobile insurance contained three boxes which were to be checked by the insured if the provisions were applicable. The three boxes contained the following:

"(1) Option II may be waived when there is no family income from employment. If this option is waived, it is waived completely for all who are insured under the policy. I certify that I, or my family, have no employment.

"(2) I desire uninsured/underinsured motorists coverage limits of (_____) which are lower than my bodily injury limits.

"(3) I hereby acknowledge by my signature below that I have received and read the 'Important Notice.' This is information concerning benefits options that are required to be provided under Pennsylvania law."

On the original application completed by decedent, Richard Profit did not check any of the boxes or fill in the uninsured/underinsured coverage limits in the space provided. Richard Profit did not sign the waiver acknowledging that his uninsured/underinsured limits were lower than his bodily injury limits. Richard Profit did sign the policy application for insurance and paid the policy renewal premiums for the reduced benefits on October 28, 1986, April 28, 1987, October 28, 1987, and April 28, 1988, respectively, but did not sign a renewal sheet at the time of the application for insurance and on each occasion of the policy renewal thereafter. Richard Profit was issued a declaration sheet clearly spelling out the lower uninsured/underinsured motorist limits and he paid premiums reflecting those reduced limits.

On or about June 28, 1988, Anita and Richard Profit were involved in an automobile accident. Both Anita and Richard sustained injuries as a result of this accident and on July 26, 1988, Richard Profit died. The other vehicle involved in this accident was driven by one Jonathan Hornberger, who was insured by State Farm Insurance Company with bodily injury liability limits of $25,000 per person and $50,000 per occurrence. Anita Profit individually, and as administratrix of the estate of Richard Profit, was paid the $50,000 bodily injury liability limits under Hornberger's policy. Thereafter, Anita Profit, individually and as administratrix of the

estate of Richard Profit, applied to Nationwide Insurance Company for the underinsured motorist coverage equal to bodily injury liability limits of $50,000/$100,000 rather than the $15,000/$30,000 reflected in the policy. Plaintiff Nationwide Insurance Company refused to pay the higher limits contending that decedent Richard Profit had chosen the lower underinsured motorist limits as evidenced by his insurance application and his subsequent payment of renewal premiums pursuant to section 1791(6) of the Motor Vehicle Financial Responsibility Act.

Two issues are presently before the court. First, whether the decedent, Richard Profit, validly selected lower underinsured/uninsured motorist limits within the meaning of section 1734 and section 1791 of the Motor Vehicle Financial Responsibility Law. Second, whether defendant Anita Profit is bound by the election of lower limits under the policy even though it had been signed only by Richard Profit.

The Pennsylvania Motor Vehicle Financial Responsibility Law imposes a requirement that an insurer provide uninsured and underinsured motorist coverage in an amount equal to the bodily injury liability coverage unless the insured waives that requirement. Section 1731(a) of the Motor Vehicle Financial Responsibility Act, in relation to scope and amount of coverage states as a general rule, that:

"No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured and underinsured motorist coverages are provided therein or supplemental thereto in amounts equal to the bodily injury liability coverage except

as provided in section 1734 (relating to request for lower or higher limits of coverage)." 75 Pa.C.S. §1731.

Section 1734 of the Motor Vehicle Financial Responsibility Act states that:

"A named insured may request in writing the issuance of coverages under section 1731 (relating to scope and amount of coverage) in amounts less than the limits of liability for bodily injury but in no event less than the amounts required by this chapter for bodily injury." 75 Pa.C.S. §1731.

Section 1791 of the Motor Vehicle Financial Responsibility Act specifies the form of notice which must be furnished to the insured concerning the availability of various coverages and the insured's right to select greater or lesser amounts of coverage.

Section 1791 states:

"Insurance companies operating in the Commonwealth of Pennsylvania are required by law to make available for purchase the following benefits for you, your spouse or other relatives, or minors in your custody or in the custody of your relatives, residing in your household, occupants of your motor vehicle, or persons struck by your motor vehicle."

The statute goes on to enumerate the maximum policy limits required by law to be made available for purchase by the insurance companies. Section 1791(6) pertains to uninsured/underinsured and bodily injury liability limits and concludes with the following:

"Additionally, insurers may offer higher benefit levels than those enumerated above, as well as additional benefits. However, an insured may elect to purchase lower benefit levels than those enumerated above, as well as additional benefits. Your signature on this notice or your payment of any renewal premium evidences your actual knowledge

and understanding of the availability of these benefits and limits, as well as the benefits and limits you have selected." 75 Pa.C.S. §1791.

The central issue for this court to decide is whether Richard Profit knowingly waived his right under Pennsylvania law to have uninsured/underinsured limits equal to the bodily injury limits of his automobile policy. While Richard Profit did sign the original policy application and renewed payments for the lower uninsured/underinsured motorist coverage over a period of two years, Richard Profit allegedly did not receive the statutorily mandated "important notice" and did not check either box, acknowledging that he had read and received the "important notice" or that he desired uninsured/underinsured motorist coverage limit lower than bodily injury limits.

We find guidance in *Prudential Property and Casualty Insurance Co. v. Pendleton,* 858 F.2d 930 (3d Cir. 1988), where the court held that under the PMVFRL, an insured's signature under the "important notice" language of the policy created a conclusive presumption in section 1791 that "Once it is proved that an insured voluntarily signs the waiver, he cannot be heard to rebut it." 858 F.2d at 936. Furthermore, an insured's signature under the section of automobile policy waiving statutory requirement that uninsured motorist coverage equal coverage for bodily injury established a conclusive presumption that the insured had waived such coverage and could not be rebutted by showing ambiguity with regard to which box determining the level of uninsured motorist coverage was checked.

In *Prudential, supra,* the application for no-fault vehicle insurance was filled out by Augustus Saxton, an agent employed by Prudential, and Virgil

Robinson at Robinson's residence and was signed by Robinson in the following three places:

(1) Under the election for uninsured and underinsured motorists coverage;

(2) Under the binder of insurance coverage; and

(3) Under the "important notice" language of the policy.

The original application and all but one carbon copy were then taken by Saxton and he gave the remaining carbon copy to Robinson. Saxton's copy clearly showed that the box checked for uninsured/underinsured coverage was $15,000/$30,000. However, Robinson's copy showed the check mark to be between two boxes namely the box designating $15,000/$30,000 in coverage and the box which states "the same as my bodily injury limits ($50,000/$100,000)."

This case is distinguishable from the present case in that Robinson signed the policy in three places, particularly under the "important notice" language of the policy and under the election for uninsured and underinsured motorist coverage. Richard Profit only signed the application once, at the end of the policy. Unlike the insured in *Prudential,* Richard Profit did not sign under the "important notice" language, neither did he tick the box acknowledging by his signature that he had received and read the "important notice." The "important notice" containing the language of section 1791 was in bold print with a short footnote at the end stating:

"Your signature on your application for auto insurance will acknowledge you have received and read this Important Notice."

Defendant alleges that Richard Profit never received this "important notice," neither did he tick the box acknowledging that he had received and read the "important notice." Unlike the insured in

*Prudential,* Richard Profit did not sign a waiver for the election of lower limits of uninsured/underinsured motorist coverage.

While factually the *Prudential* case is distinguishable, its discussion on the sufficiency of waiver given the lack of statutory guidance is particularly helpful. Prior to the PMVFRL, a predecessor act construed the sufficiency of waiver in the case of *Johnson v. Concord Mutual Insurance Company,* 450 Pa. 614, 300 A.2d 61 (1973). This case merely provided with respect to waiver that the named insured shall have the right to reject such coverage in writing and that an effective waiver provision must be conspicuous, and contain language "clearly and specifically" apprising the insured of the nature of the right he is relinquishing and must when executed by the insured represent an "affirmatively expressed rejection." The Pennsylvania Supreme Court in *Johnson* concluded that defendant insurer did not meet the burden of proving that an insured knowingly and intelligently waived uninsured motorist protection. In so holding the court emphasized that a waiver of uninsured motorist protection is effective only if the insured, with knowledge of his right to the protection, manifests his intention to relinquish such right by a clear, decisive and unequivocal act. Since the rejection statement itself contained no explanation of the coverage and since the insurer's agent failed to offer such an explanation at the time the application form was tendered, such statement was held not to constitute a waiver.

With regard to waiver, the court in *Prudential* citing *Johnson* held that an effective waiver must be conspicuous and must contain language "clearly and specifically" apprising the insured of the nature of the right he is relinquishing. Furthermore, 75 Pa.C.S. §1734 states that a named insured may

request in writing the issuance of coverages under section 1731 (relating to scope and amount of coverage) in amounts less than the limits for bodily injury. It is this court's view that the waiver agreement must meet certain basic standards relative to clarity and conspicuousness.

Richard Profit did not sign the waiver acknowledging that his uninsured/underinsured motorist limits were lower than his bodily injury limits. Richard Profit did not check the box indicating that he desired uninsured/underinsured motorists limits lower than the bodily injury limits, nor did he fill in the amount in the blank space provided. It is this court's view that the language of the waiver agreement cannot merely require a box to be checked after a reference to the desirability of uninsured/underinsured motorist coverage limits lower than the bodily injury limits. A waiver agreement cannot accomplish an enforceable deletion of uninsured/underinsured motorist coverage equal to bodily injury liability coverage under section 1731 by mere implication, but must expressly apprise the insured of the basic nature of the protection he is relinquishing.

It is alleged that Richard Profit never received the statutorily mandated "important notice." This is evidenced by his failure to check the box acknowledging by his signature that he had received and read the "important notice." It is the court's view that decedent, Richard Profit, was not fully informed of the nature of the protection he was relinquishing. Richard Profit signed the application at the end of the policy. Plaintiff Nationwide Insurance Company alleges that this signature and the subsequent payment of renewal premiums, in accordance with section 1791(6) of the Motor Vehicle Financial Responsibility Act, are Richard Profit's acceptance of the lower uninsured/underinsured

motorist coverage limits. It is this court's view that Nationwide Insurance Company should have required the insured's signature with respect to waiver on the "important notice" in accordance with section 1791(6) or under the waiver language in the policy. It is this court's view that the signing of a policy application and the payment of renewal premiums merely evidences the insureds acceptance of the policy, but cannot amount to a statutorily enforceable waiver of uninsured/underinsured motorist coverage limits equal to bodily injury limits. We find that the waiver did not clearly and specifically apprise the insured of the nature of the right he was relinquishing, consequently, Richard Profit did not knowingly waive his right, under section 1734 and section 1791 of the Motor Vehicle Financial Responsibility Act, to have uninsured/underinsured limits equal to the bodily injury limits of his automobile policy.

In *Prudential, supra,* because the insured voluntarily signed the waiver the court found the presumption of waiver to be a conclusive presumption. However, since in this court's view Richard Profit did not sign a specific waiver nor did he check the box, with regard to the waiver of equal coverage, ambiguity in Profit's application should be construed against the insurer. See *Standard Venetian Blind Company v. American Empire Insurance Company,* 503 Pa. 300, 305, 469 A.2d 563, 566 (1983).

The legislature has indicated that there should be some other requirement for a knowing waiver of rights. It is this court's belief that there should be a separate signature for waiver alone. The legislature has taken steps to deal with this problem in other areas such as rejection of uninsured motorist protection by printing rejection terms, required on

separate sheets in prominent type and location. The terms must be signed by the first name insured and dated to be valid.*

For all of the foregoing reasons we enter the following

## ORDER

And now, January 15, 1991, after argument held and upon consideration of the briefs of counsel, it is hereby ordered and directed that plaintiff Nationwide Insurance Company furnish to defendant underinsured motorist coverage equal to bodily liability limits in the amount of $50,000/$100,000.

---

\* See section 1731, "Availability, scope and amount of coverage." Act 6 of 1990.