**Richard DeSILVA**

v.

**KEMPER NATIONAL INSURANCE COMPANY and Lumbermans Mutual Casualty Company.**

**Civ. A. No. 93–1310.**

United States District Court,
E.D. Pennsylvania.

Aug. 18, 1993.

Susan I. Schulman, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, PA, for plaintiff.

James C. Haggerty, Swartz, Campbell & Detweller, Philadelphia, PA, for defendants.

## MEMORANDUM

GILES, District Judge.

The parties have filed cross-motions for summary judgment. For the reasons stated below, the motions are granted in part and denied in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Richard DeSilva ("DeSilva") was injured in an accident in October, 1990, while he was operating his motorcycle and was struck by another motorcycle. He made claims for bodily injury coverage under the insurance policy covering the striking motorcycle and under his own motorcycle policy and exhausted the policy limits on both policies. He then filed suit against the striking motorcyclist. *See DeSilva v. Farkhondar,* No. 91–7853 (E.D.Pa.). In an order dated January 29, 1993, Civil Action No. 91–7853 was placed in suspense pending resolution of possible claims by DeSilva for underinsured motorist ("UIM") coverage.

At the time of the accident, DeSilva was employed by NFC Holdings, Inc. ("NFC") as a sales representative. NFC provided a vehicle to DeSilva, for his personal and business use, which was registered in DeSilva's name at his residence in Philadelphia. Deductions were taken from DeSilva's paycheck to pay for the car's insurance. The car was insured under a policy ("the Policy") issued to NFC by defendants Kemper National Insurance Company and Lumbermans Mutual Casualty Company ("Kemper"). *See* Affidavit of Richard DeSilva, attached as Exhibit "B" to Plaintiff's Response to Defendants' Counterclaim; Insurance Policy No. 3ZL 920 530–00, attached as Exhibit "A" to Defendants' Answer and Counterclaim.

DeSilva now seeks UIM coverage under the Policy. DeSilva demanded arbitration of his UIM claim and, pursuant thereto, filed a Petition for Appointment of Arbitrator in the Court of Common Pleas of Philadelphia County. Kemper removed the case to this court and has filed counterclaims. The counterclaims seek a declaration that DeSilva is not entitled to UIM coverage or arbitration of his UIM claim, and ask the court to enjoin him from seeking such coverage and arbitration.

After answering the complaint and counterclaiming, Kemper filed a motion for judgment on the pleadings. Because Kemper's motion and DeSilva's response relied upon evidence outside the pleadings, the court ordered that they be considered to be cross-motions for summary judgment under Federal Rule of Civil Procedure 56. The parties were given time to submit any additional evidence made pertinent by Rule 56. *See* Memorandum and Order of May 24, 1993. We now consider the merits of the cross-motions for summary judgment.

## II. APPLICABLE LEGAL STANDARDS

Federal Rule of Civil Procedure 56 requires that summary judgment be entered in favor of the moving party when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

When the underlying facts are not in dispute, the interpretation of an insurance contract is a question of law. *Harad v. Aetna Cas. & Sur. Co.,* 839 F.2d 979, 982 (3d Cir.1988) (citing *Standard Venetian Blind Co. v. American Empire Ins. Co.,* 503 Pa. 300, 305, 469 A.2d 563, 566 (1983); *Niagara Fire Ins. Co. v. Pepicelli,* 821 F.2d 216, 219 (3d Cir.1987)). In interpreting a policy, the court is to "ascertain the intent of the parties as manifested by the language of the written instrument." *Gene & Harvey Builders, Inc. v. Pennsylvania Mfrs. Ass'n Ins. Co.,* 512 Pa. 420, 517 A.2d 910, 913 (1986).

> [I]f the language of an insurance policy is clear and unambiguous, its ordinary meaning is to be given effect; policy terms should be read to avoid ambiguities; a provision is ambiguous if reasonable persons on considering it in the context of the entire policy could honestly differ as to its meaning; if ambiguities do exist in the wording chosen by the insurance company, they must be resolved in favor of the insured; a court cannot rewrite the terms of a policy or give them a construction in conflict with the accepted and plain meaning of the language of the policy.

*Imperial Casualty & Indem. Co. v. High Concrete Structures, Inc.,* 858 F.2d 128, 131 (3d Cir.1988) (footnote omitted).

## III. DISCUSSION

It is undisputed that there is no UIM coverage and no UIM arbitration clause within the four corners of the Policy. Kemper therefore argues that DeSilva is not entitled to UIM benefits because the Policy does not provide for such benefits, and is not entitled to have his claim arbitrated because the Policy has no UIM arbitration clause. It therefore asks the court to dismiss DeSilva's petition for appointment of arbitrators, to declare that DeSilva is not eligible for UIM benefits, and to enjoin DeSilva from seeking those benefits. DeSilva argues that since Pennsylvania law requires the Policy to have UIM coverage the court must reform the insurance contract to include $2,000,000 in UIM coverage. He also argues that the court should impose an arbitration clause for determination of his claim by appointed arbitrators.

 Pennsylvania does require that UIM coverage be included in every policy unless waived by the insured. Because the insured did not waive UIM coverage, the Policy must be reformed to include such coverage. Although Pennsylvania mandates the provision of UIM coverage in the Policy, it does not require that disputes over that coverage be submitted to arbitration. Therefore, the court cannot reform the Policy to include an arbitration clause. Because the court does not order arbitration of DeSilva's claim, the merits of that claim must be decided by the court, or where appropriate by a jury. Kemper argues that even if the Policy is reformed to include UIM coverage, DeSilva is not an insured for the purposes of that coverage. We disagree, and conclude that DeSilva is an insured for the purposes of making his UIM claims.

### A. Reformation Of The Policy To Include Underinsured Motorist Coverage

The Motor Vehicle Financial Responsibility Act ("MVFRA"), 75 Pa.C.S. § 1701 *et seq.*, provides statutory standards for UIM coverage:

(a) General rule.—No motor vehicle liability insurance policy shall be delivered or. issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are provided therein or supplemental thereto in amounts equal to the bodily injury liability coverage except as provided in section 1734 (relating to request for lower or higher limits of coverage).

75 Pa.C.S. § 1731(a).[1] It is undisputed that the Policy has bodily injury liability coverage in the amount of $2,000,000. Therefore, the "general rule" of MVFRA is that the Policy must also provide $2,000,000 in UIM coverage. *Byers v. Amerisure Insurance Co.*, 745 F.Supp. 1073, 1075 (E.D.Pa.1990), *aff'd without op.*, 935 F.2d 1280 (3d Cir.1991).

 As § 1731(a) provides, the only exception to the general rule that every policy must have UIM coverage equal to bodily injury coverage is provided by § 1734 of MVFRA. Section 1734 provides in pertinent part: "A named insured may request in writing the issuance of coverages under section 1731 ... in amounts less than the limits of liability for bodily injury." 75 Pa.C.S. § 1734. Because Kemper has presented no evidence that the insured made a written request for UIM coverage in an amount less than the limit of liability for bodily injury, the Policy is required by law to provide $2,000,000 in UIM coverage, and must be

---

**1.** The Policy was issued on January 1, 1990. MVFRA was amended effective July 1, 1990. *The accident occurred in October, 1990.* Therefore, the Policy was issued before the effective date of the 1990 amendments, but the accident occurred and claims were made after those amendments, and the court must decide which version of the Act to apply. Because the plain language of § 1731 places restrictions on policies "delivered or issued," we conclude that the pre-amendment version of the act, which was in

effect when the Policy was issued, is the law to be applied. *See also First National Bank v. Flanagan*, 515 Pa. 263, 270, 528 A.2d 134 (1987) (only laws in effect when contract is entered into are implicitly incorporated into contract). In any event, the main relevant effect of the 1990 amendments was to include in the Act explicit forms to be used for waiving UIM motorist and uninsured motorist ("UM") coverage, and would not change our conclusions that UIM coverage was not waived in this case.

reformed to reflect this.[2] *See, e.g., Nationwide Insurance Co. v. Resseguie*, 782 F.Supp. 292 (M.D.Pa.1992) (reforming UM/UIM coverage from $15,000 amount stated in policy to $50,000 policy limit on bodily injury liability), *aff'd in relevant part*, 980 F.2d 226 (3d Cir.1992); *Byers*, 745 F.Supp. at 1075-1077 (reforming UIM coverage from $35,000 amount stated in policy to $300,000 policy limit on bodily injury liability).

### B. Arbitration Is Not Required

The Policy does not contain a UIM arbitration clause within its four corners. DeSilva has submitted what he claims is Kemper's "standard" provision for UIM coverage, *see* Plaintiff's Response to Defendant's Motion for Judgment on the Pleadings, Exhibit C, and asks the court to reform the contract to include the arbitration clause contained in this "standard" form. The court will not require Kemper to arbitrate DeSilva's UIM claim.

Although public policy favors arbitration of insurance claims, *see, e.g., Federal Kemper Ins. Co. v. Reager*, 810 F.Supp. 150, 154 (E.D.Pa.1992), arbitration is not required by law. Under Pennsylvania law, a coverage dispute must be submitted to arbitration only if "the parties entered into an agreement to arbitrate." *Nationwide Ins. Co. v. Patterson*, 953 F.2d 44, 46 (3d Cir.1991). *See also Johnson v. Pennsylvania Nat. Ins. Cos.*, 527 Pa. 504, 594 A.2d 296, 298 (1991) (MVFRA does not require arbitration of UM/UIM claims). In the instant case, there is no UIM arbitration clause in the Policy. Therefore it is impossible to say that Kemper agreed to arbitrate any UIM claims arising under the Policy, and it cannot be forced to arbitrate.

■ DeSilva argues that although the Policy does not contain a UIM arbitration clause, it should be reformed to include one. When the parties to a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances will be supplied by the court. *Restatement (Second) of Contracts* § 204 (1981); *accord Bruch v. Firestone Tire & Rubber Co.*, 828 F.2d 134, 147-148 (3d Cir. 1987), *aff'd in part and rev'd on other grounds in part*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). However, the dispute between the parties in this case can be resolved by this court. Therefore, an arbitration clause is not "essential to a determination of their rights and duties," and such a clause will not be supplied.

### C. DeSilva Is Insured For UIM Claims

Because we do not require that DeSilva's claim be arbitrated, coverage issues must be decided by the court. Kemper argues that even if the Policy is reformed to include UIM coverage, DeSilva is not eligible for that coverage because he is not an insured for the purposes of making a UIM claim. We disagree.

■ The Policy's Declarations Sheet states that the "Named Insured" is NFC Holdings, Inc. The Policy further defines "Insured" as "any person ... qualifying as an insured in the WHO IS INSURED section of the applicable insurance." (boldface omitted). Because there is no provision for UIM coverage within the four corners of the Policy, there is no "who is insured" section for UIM coverage. Thus, the Policy does not define who is an "insured" for the purposes of UIM claims. Because the definition of who is an insured for the purposes of UIM coverage is "essential to a determination of [the parties'] rights and duties," a definition "which is reasonable in the circumstances" must be supplied by the court. *Restatement (Second) of Contracts* § 204 (1981); *Bruch*, 828 F.2d at 147-148 (when parties to contract did not reach agreement on what constitutes

---

2. The Policy contains an endorsement captioned "Uninsured and Underinsured Motorist Coverage," which provides: "It is agreed that for all states, where permitted to do so, the insured has elected to reject all uninsured and underinsured motorists coverage. In those states where the rejection of coverage is not permitted, the re- quired statutory coverage limits are to apply at the time of accident or loss." The presence of such language in the policy does not constitute the "request in writing" required by MVFRA for a reduction in UIM benefits. *Byers*, 745 F.Supp. at 1075-1077.

a "reduction in force," court should adopt the most reasonable understanding of the term).[3]

■ In determining what is "reasonable in the circumstances," the "court should supply a term which comports with community standards of fairness and policy." *Id.* § 204, Comment d. Consideration of the Policy's language and the rationale behind statutorily required UIM coverage leads the court to conclude that DeSilva is insured for UIM coverage under the policy. First, because DeSilva is an insured for the other types of coverage provided in the policy, it is fair and reasonable to find that he is insured for UIM coverage. Public policy also favors extending UIM coverage to DeSilva. Finally, to the extent that "insured" is left undefined by the Policy, it is ambiguous and so must be interpreted against the insurer.

In identifying the most fair and reasonable definition of "insured," the court may be guided by other statements in the contract regarding the meaning of the term. *Bruch,* 828 F.2d at 148 n. 14 (in supplying definition of "reduction in force," court should be guided by the way term is used elsewhere by the drafter of the contract). The other definitions of "insured" in the Policy point to a definition of "insured" which includes DeSilva. An endorsement to the Policy defines "who is insured" for the purposes of liability and UM coverage as including "all employees permanently assigned company owned or leased automobiles." It is undisputed that at the time of the accident DeSilva was employed by the named insured, NFC, as a sales representative. The Policy was issued to insure a vehicle provided by NFC to DeSilva for his personal and business use. The vehicle was registered in DeSilva's name at his residence in Philadelphia. Thus, the plain language of the Policy shows that DeSilva is an "insured" for the purposes of liability and UM coverage. Because it is fair and reasonable for the court to supply the same definition of "insured" to UIM coverage as is used in the policy for UM and liability coverage, we conclude that DeSilva is an "insured" for the purposes of making a UIM claim.

Public policy also favors a finding that DeSilva is insured for UIM coverage. The purpose of MVFRA "has been frequently and consistently interpreted by [Pennsylvania] courts as providing protection to innocent victims of uninsured [and underinsured] drivers[.] ... [T]he statutes have been designed to give monetary protection to that ... large group of persons who ... suffer grave injuries through negligent use of those highways by others." *Byers,* 745 F.Supp. at 1078 (citations and internal quotation marks omitted). Because this statutory purpose requires that "questions about coverage should be decided in favor of increased protection for accident victims," *id.,* we conclude that DeSilva is an insured for the purposes of making a UIM claim.

Finally, we note that to the extent that "insured" is left undefined by the Policy, it is ambiguous and so must be interpreted against Kemper, the drafter of the Policy. *Imperial Casualty,* 858 F.2d at 131. Thus, all considerations lead the court to conclude that DeSilva is "insured" for the purposes of making a UIM claim under the Policy.

## IV. CONCLUSION

Pennsylvania law requires that the Policy be reformed to provide $2,000,000 in UIM coverage. DeSilva is an insured and is entitled to seek UIM benefits under the Policy. However DeSilva is not entitled to have his UIM claim arbitrated, and the merits of his claim will be decided by the court.

---

**3.** Comment "b" to Section 204 of the *Restatement* describes how such an omission of a term "essential to a determination of [the parties'] rights and duties" typically occurs: "The parties to an agreement may entirely fail to foresee the situation which later arises and gives rise to a dispute; they then have no expectations with respect to that situation, and a search for their meaning with respect to it is fruitless."